Case number 22-1757, Aprio, Inc. v. Neil Zaccari, Appellant. Mr. Keenan for the Appellant, Mr. Hutchings for the Appellee. Good morning, Mr. Keenan. We'll hear from you. Thank you, Your Honor. Good morning, and may it please the Court. Gregory Keenan, appearing on behalf of my opponent, Neil Zaccari. There are two rights-granting contract provisions that issue in this appeal. First, there's Section 2.2's licensing provision. But importantly, Section 2.2's non-exclusive license cannot help Aprio's claim for a transfer of copyright ownership. That's because a non-exclusive license cannot transfer copyright ownership by the plain text of the Copyright Act. As such, nothing in Section 2.2 can establish transfer of copyright ownership here. Second, there's Section 2.3's assignment provision. But critically, Section 2.3's assignment provision only applies to copyright material made, quote, during the period of my service. In other words, during the period of Mr. Zaccari's employment. As such, Section 2.3 does not transfer any copyright in any software that Mr. Zaccari created before his employment, such as the underlying code that was created in 2008, roughly seven years before his employment began. But in his copyright application, he said that the invention, so to speak, was created in 2016, which was during his employment, right? That's what he said, right? He registered it in 2016 and didn't identify it as a derivative work. That's right. But importantly, copyright registration doesn't set the parameters for copyright protection under the Supreme Court. Doesn't the application ask when the work was created? I believe it asks when he registered it, and it asks if it was based on prior content, which he didn't flag it as a derivative work. That's true. So if he did not flag it as a derivative work, then how is it? And I believe that there were requests for admissions, which are binding. That's the whole purpose of them, right? Yes, Your Honor. So that we can narrow the issues for discovery in a civil case. So the request for admissions responses identified the work as being created in 2016, right? It requested an admission that wasn't a derivative work. So can I quickly answer just regarding registration and then directly address that? Sure. Okay. So importantly, the Copyright Act itself clarifies in Section 408C1 that the administrative classification of the work has, quote, no significance with respect to the subject matter of the copyright or any of the exclusive rights protected by the title. And that's because copyright, even though we register them very often, as the Supreme Court has made clear in the Fourth Estate decision, copyright protection, it is granted immediately upon creation, whether or not you ever go and register anything. I understand that, but I thought that the application nonetheless asked the question of when the work was created. Am I wrong about that? I'll be honest. I don't know off the top of my head if it asked when it was created, as opposed to if it was based off prior things. But even if it were, and 411B2 makes clear that certificate of registration satisfies requirements of this section, regardless of whether the certificate contains any inaccurate information. So determining the scope of protection based off of information in the registration, well, I think a natural instinct, just as a matter of statute, probably isn't the proper way to determine the scope of protection. And that's, again, in part because if Mr. Zachary created the work in 2008, which he did create the base code, there's record evidence that he created a base code in 2008. The moment he does that, he receives protection into it, whether or not he registers anything with the Copyright Office at all. As to the admission itself, the admission was whether or not edited code was a derivative work. There's two answers to that. Our first answer would be that derivative work is a defined term under the Copyright Act. So that's a purely legal conclusion, we would argue. Because the admission said, admit that the software is not a derivative work. The statute lays out that derivative work is a work based off of pre-existing material. And the statute also makes clear that any copyright and derivative work wouldn't extend to the underlying pre-existing material. In the alternative, even if we completely accepted the fact, let's say we're bound with this admission despite the fact that we think it's a legal admission as opposed to a factual admission or factual admission leading to a legal admission, that still wouldn't change the fact that by operation of the Copyright Act, the provisions of Section 2.2 and 2.3 still wouldn't give access to, wouldn't give protection to that underlying material. Because the only provision that would be affected by this being a derivative work would be Section 103, which says that a derivative work protection doesn't extend to the underlying material, but there's also other provisions of the Copyright Act that don't require a work being a derivative work that clarify that you're not going to get the underlying material. So Section 102A's originality requirement, for example, it's table stakes in copyright that you only get protection for what's called an original work or original components of a work. And original means not copied. So we know that he created a work in 2008. We know that there was stuff with the admission that it's not a derivative work. That doesn't change the fact that anything that's transferred in that edited code, it just can't give exclusive copyright the elements that are copied and not original. That's a matter not just of statute, as the Supreme Court clarified in Feist, that's a constitutional mandate. The Copyright Act and the Intellectual Property Clause limit the ability to protect writings to original materials. And so to the degree there was a transfer in Section 2.2 and 2.3 of the contract say, you know, it's not going to transfer anything prior to employment. The only portions of the work they're going to transfer over are the new works, not based off of the underlying work. And that's not just because of those provisions, but it's also because the copyright in that is not going to grant exclusive copyright ownership in anything that was copied or not original from any other. I'm not sure I understand where that gets you, because the fight here isn't about whether or not he can use or retain copies of the software as it was written in 2008, right? That's right. So what difference does it make if indeed he retains copyright to the version that he wrote at that time? I think it goes a step further, Your Honor. It's that not just does he retain that copyright, but the transfer of the subsequent copyright would only give an exclusive ownership right in those portions of the work that were original, that weren't created. So essentially the primary error that just respectfully shouldn't be affirmed here is that the district court below said each and every portion of the edited code, each and every portion of the edited code was granted to APRIO, and that doesn't make sense. I don't see how that argument makes sense in that revised code, the edited code, can't work without what came before it. I mean, it all works together. Revised code builds on the old code. So you're trying to say that APRIO only got a copyright to, you know, half a code, so to speak, the new half, but even if it needs the other half to work, it doesn't have a copyright to that half? I just don't understand your argument. Importantly, not exclusive copyright ownership. Remember, section 2.2 of the contract talks about a license, a non-exclusive license. So they might have an argument that they could make a licensed use of it. That's not what they asked for. They asked a termination that they were the exclusive owner of each and every bit of the new code, including the portions of the code that they had copied previous existing code from that base code. That's a very different thing. And actually, if I could just quote the provisions of the district court's opinion, where it's relying on an exclusive license code in order to grant, or a non-exclusive license, but in order to grant exclusive ownership, the court said, here it is enough to note that having created the base code in 2008 makes no difference for purposes of amperior rights under paragraph 2.2. That maybe will be true, but 2.2 is not, it's a non-exclusive license. It's what it grants by its plain term. What do we do with the fact that the company asked him whether or not there was, this was a derivative work, there was any works that he was claiming copyright ownership of, and he did not identify any such? Yes, your honor, I think you're referring to 2.2's requirement to disclose prior inventions, and he didn't fill that out. I mean, how is the railroad supposed to run, so to speak, if given that opportunity to identify any prior works, saying, I intend to retain the copyright of this, and it's not, I'm not using it as part of my work for you. I developed this before I worked for you, and I have a copyright in this that I want to repaint. You're given the opportunity to identify that, you don't. Yes, your honor. It seems that that's the whole point. Well, it certainly might have implications for 2.2, but importantly, the language of 2.2 is pretty clear. The first sentence says, inventions, which I made prior to the commencement of my service, are excluded from the scope of this agreement. Later, it defines a term which is required for requirements to qualify as that. So, we would argue that doesn't qualify as a defined term within 2.2 of a prior invention, because it's not just an invention that was made beforehand. It also is, it's required that it's a, one that will be used in your service with the company. Mr. Zandri wasn't a software developer here, so this wasn't something that was in the, within the service. So, the district court found that this was used, the district court made a finding that this was used. Are you saying that that finding was clearly erroneous, or that somehow we're supposed to overturn that finding? The legal error is that even if he failed, even if that were an okay finding, and even if he failed to disclose on this prior invention form, it just doesn't change the fact that when you read the contract, 2.2 is granting a non-exclusive license. So, even if the failure to disclose has an implication for 2.2, at best, it's going to get you a non-exclusive license. It's not going to get you an exclusive ownership, which is what they saw in the receipt below. Any questions? All right. Thank you. We'll give you some time on rebuttal. Thank you very much, your honors. Good morning, your honors. John Hutchins for APRIO. So, the CRR software was created in 2016, and that was admitted, both in requests for admit and in the answer. Paragraph 40 of the answer affirmatively states by Mr. Zachary that the CRR software was created, quote, during the time period he was also an employee of APRIO. Full stop. Since the CRR software was created in 2016, admittedly, and, of course, your honor is correct, copyright applications and copyrights themselves provide date. Here, the date was 2016, also provided by Mr. Zachary. The copyrights at 692 and the applications at 950. Having been created in 2016, admittedly, during the time of his employment, it was an assigned invention under section 2.3. 2.3 assigns any inventions created or reduced to practice during the period of employment, whether registrable or not. So, I think the notion of which portions are or aren't registrable for copyright, a bit of a red herring. What's important, it was created in 2016, and admittedly so. Yet another reason it can't be a prior invention, subject to any exception of section 2.2, is that no prior inventions disclosure form is filled out. Also, admittedly so. While I'm discussing admissions in general, whether a work is derivative or not is absolutely not a question of law. In fact, it's a question of fact. And I'll cite to you Folio Impressions v. Byer, 937 F. 2nd, 759, and Atkins v. Fisher, 331 F. 3rd, 988. It's a perfectly appropriate admission that we're entitled to rely upon. So, for all of those reasons, section 2.3 assigned the rights. And that's all the also noted, as I just explained, section 2.2 could not apply, both because it wasn't a prior invention, because it was created in 2016, admittedly, and because it wasn't disclosed as it would have had to have been. And as to the issue of whether it was used in connection with his work, district court's opinion and the admitted facts he relies upon speaks for itself. Mr. Zakari, by his own telling, was working on a project for APRIO for the government to render their contract review more efficient. He created this software, he says, because he knew it would be useful. He brought it in to show to APRIO and APRIO's customer. He admitted the only reason he had access to APRIO and APRIO's customer and was able to do that was because of his employment. And then he states that APRIO told him to provide it to the government as a condition of his employment. And he did so and kept his job for the remaining 10 months until the contract ended. That describes using use in connection with your employment. By definition, I would submit. Can I ask about the contract formation issue? And I think you're on very strong ground there, but I just want to kind of play it out a little bit. Let's imagine that instead of making the admissions that you're suggesting, Mr. Zakari made, that he had said, deny, deny, deny. You could acknowledge those denials without agreeing with them, correct? Say the last part of the question again, sir. You could acknowledge his denials without agreeing with his denials, correct? Yes. There's a difference between acknowledging and agreeing. Theoretically, there could be. But if I said to my friend, hi, Jackson, the weather's nice, and he acknowledged my greeting, it doesn't mean he's agreeing with me that the weather's nice, correct? Theoretically, that's absolutely the case. What's different here? What about the requires no specific magic word of I agree versus I assent versus I accept? Except, which was admittedly used in the forest. That was the fact scenario in the forest case where the court held contract formation. I assent can mean I agree to the contract. It could mean I assent that I received the contract. The Metropolitan case, which held that copyright assignments can be electronically assigned. The court discussed, yes. There is no difference in kind between agree, accept, assent, acknowledge, yes. And D.C. law is crystal clear that what matters is the objective manifestation. What Aprio requested happened in this case to say acknowledge. And he acknowledged it. Was there some benefit to using the word acknowledge there as opposed to agree or were they just the same and either one would have worked just as well? Either would have worked just as well. I mean, so when when this issue came up, I actually cracked open my Black's Law Dictionary, which it had been about 30 years. When I went to law school, it was given to me as a gift as many law students get that as a gift. And acknowledge means to accept responsibility for in general. So I think that there's nothing wrong with acknowledge. I'll also note that the term acknowledge also has been used for contract formation in exactly this scenario where an agreement is pulled up. You see the agreement and you click acknowledge. That's the Fox versus Computer World case, which was cited to the district court in this matter, 920 F sub second 90. And there an employee was being onboarded and he pulled up all the various onboarding agreements for his employment, one of which was an arbitration agreement. And he acknowledged it. And the DDC had no problem holding that acknowledging their manifested contract formation. But even if one were to quibble about that, and I don't think the law of DC and contract formation requires you to say, I agree, I agree to the agreement versus I acknowledge, I agree to the agreement or I assent or yes. He has other objective manifestations such as the 10 months he continued to accept consideration and under DC contract law, DC allows for contract formation when a party accepts the consideration. What's the consideration for the assignment? Uh, the 10 twelfths of the $150,000 he was paid for the ensuing 10 months, but he doesn't get any separate consideration for any sort of a license. That's a sign. No, it was. That's correct. So, so, so he gives up all rights and earns no royalties whatsoever on his creation. His, just his salary, which I say, just, I mean, he was, he was salaried at $150,000 a year as a senior technical manager. And so, and that's the case whenever, I mean, that's no different than whenever these company agreements go into, go into effect. And the consideration, by the way, is set out literally in the opening sentence. The title of the agreement is bold and caps saying it's an inventions assignment agreement. Immediately under that, it explains that consideration is his being retained as an employee and receiving. So I remember, right. But he tried to use this agreement against you. Well, that's the third manifestation of assent. Objectively is that he hired a lawyer and brought suit to enforce the agreement in federal court. And that's a pretty strong objective manifestation that he intended to be bound of bringing a federal lawsuit to enforce a contract. And I'll go so far as to say that I'm certainly unaware of any case. I'm aware of a ton of cases that hold that the clicking, the acknowledgement would have been enough. I'm aware of a bunch of cases saying that remaining employed for the 10 months and accepting the benefit would have been enough. And I'm not aware of no case in which someone attempted to enforce a contract and then was able to claim a secret subjective intention to not be bound that was later recovered in memory. Trumped, because if that were true, no contract known to man would ever be safe. And of course, that's not what D.C. law is extremely clear that it goes full bore into the objective area of contract law. Unless your honors have any other question, I appreciate your time and I'll conclude. Thank you. All right. Thank you. All right. We'll give you two minutes for rebuttal, Mr. Keenan. Thank you very much, your honors. Say quickly. To affirm beyond the interpretation, whether or not a copyright was even transferred or what scope of copyright was transferred into this, we'd still have to affirm on both formation and Section 204 signature requirement. So just quickly, Section 204 requires any time a copyright is transferred, there's a signed requirement. While the E-Sign Act doesn't put electronic signatures on different footing, I don't think we used paper and pen to just check something that said acknowledge. That would satisfy the ordinary meaning of signature. So it's not clear that regardless of the formation question, this satisfies Section 204's signature requirement of the Copyright Act for a transfer. Beyond that, I just want to reiterate that the Supreme Court in twice said that there was an important limitation on the protection of a copyright. The mere fact that a work is copyright doesn't mean that every element of that work is copyrighted. What's required is originality. Originality means not copied from something else. Beyond that, regardless of whether or not it's a derivative work, there's multiple provisions of the Copyright Act that are violated by essentially saying that this transfer under 2.3 transferred each and every component, including the copied components of the prior code. Section 102A's originality requirement, Section 103B, which makes clear that pre-existing materials that are copied don't extend to the derivative work. That's the only one that's affected by being a derivative, not Section 102A's originality, 201B's, 201D2's divisibility. And finally, I think it's important that when he was fired, ultimately, ironically, he received a termination letter that asked him to, and it's at 3JA608, to acknowledge signature. It's an acknowledgement signature. So one thing that's important on the formation question is that the record shows that this company had made employees sign not just contracts, but also policies where they would acknowledge things. And even when he was fired, it required an acknowledgement signature, which I don't think was forming a contract. So I think there is a distinction between acknowledge and agree. Thank you very much, Your Honor. Thank you. We'll take the case under advisement.
judges: Wilkins, Walker, Randolph